UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS BOLTON

    Plaintiff,                        Civil Action No. 15-11838
                                            Honorable Matthew F. Leitman
          v.                       Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 14, 16]

      Plaintiff Dennis Bolton appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). The Honorable Matthew F. Leitman referred this matter for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 2]. After reviewing each party's motion for summary judgment and holding a hearing on May 31, 2016, the Court finds that the decision by the administrative law judge ("ALJ") is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion **[R. 16]** be **GRANTED**;

- Bolton's motion **[R. 14]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

  A.  **Bolton's Background and Claimed Disabilities**

Bolton was 40 years old when he submitted his application for disability benefits in August 2012, and alleged a disability onset date of November 1, 2011. [R. 7-5, Tr. 223, 229]. He has past relevant work as a pipefitter. [R. 7-2, Tr. 35].

Bolton alleged that he was disabled from heart problems, headaches, speech problems, mental problems, high blood pressure, depression, and first degree heart valve blockage. [*Id.*]. After a hearing, the ALJ determined that Bolton was not disabled. [*Id.*, Tr. 22]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.,* Tr. 1-3]. Bolton timely filed for judicial review. [R. 1].

  B.  **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Bolton was not disabled. At step one, the ALJ determined that Bolton had not engaged in substantial gainful activity since August 2012. [R. 7-2, Tr. 26]. At step two, the ALJ identified severe impairments of: "history of cerebrovascular accident due to atrioventricular block; hypertension; schizophrenia; poly-substance abuse disorder;" and "antisocial personality disorder." [*Id.*]. At step three, the ALJ determined that none of Bolton's impairments, either alone or in combination, met or medically equaled a listed impairment. [*Id.* Tr. 31-32]. In making this determination, the ALJ found that Bolton had, at most, moderate limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence and pace, with no episodes of decompensation that have been of extended duration. [*Id.*].

Next, the ALJ assessed Bolton's RFC, finding him capable of performing light work with the following limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds; can never work at unprotected heights and must avoid hazardous machinery such as machinery with moving mechanical parts; and can never operate a motor vehicle. In addition, the claimant is limited to simple, routine, and repetitive unskilled tasks performed at an SVP #1 or #2 level as defined in the Dictionary

4

> of Occupational Titles. The claimant is limited to work tasks free of fast pace production requirements with few if any work place changes and with nothing more than simple work related decisions required. Additionally, the claimant is limited to only occasional interaction with supervisors and with coworkers, can have no tandem tasks with coworkers, and can have no interaction with the public.

[*Id.*, Tr. 32]. At the fourth step, the ALJ determined that Bolton did not have the RFC to perform past relevant work. [*Id.*, Tr. 35]. At step five, with the assistance of VE testimony, the ALJ determined that a hypothetical claimant matching Bolton's profile could perform a substantial number of jobs in the national economy, including hand packager (100,000 jobs nationally), small products assembler (100,000 jobs) and visual inspector checker (80,000 jobs), and was thus not disabled. [*Id.*, Tr. 36].

## II. ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

5

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Bolton argues that the ALJ erroneously relied on the opinion of state agency consulting psychologist Kathy A. Morrow, Ph.D.; that the ALJ failed to accord adequate weight to the opinion of Bolton's treating physician; that the ALJ's RFC assessment was not supported by the record; and that the ALJ failed to properly evaluate Bolton's mental RFC under Social Security regulations. The Court disagrees.

### A. The ALJ Did Not Err in Giving Dr. Morrow's Opinion Great Weight

The ALJ accorded great weight to opinion of Dr. Morrow, the state agency consultant, who found in September 2012 that Bolton had only moderate limitations and should be able to perform simple, unskilled work. [R. 7-2, Tr. 35; R. 7-3, Tr. 130-31]. Citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009), Bolton argues that the ALJ's reliance on Dr. Morrow's opinion was error because Dr. Morrow did not review the complete record, including his diagnosis of schizophrenia in May 2013. [R. 7-7, Tr. 581-85]. He further argues that Dr. Morrow's opinion is unreliable because she wrongly believed that he had worked as a pipefitter from 1988 to 2011, when he had in fact been in prison from 2006 to 2010. Finally,

6

Bolton argues that Dr. Morrow's opinion deserves less weight because she is a psychologist rather than a psychiatrist. These arguments are unpersuasive.

In *Blakely*, the court overturned the decision of an ALJ who adopted the findings of the state agency consultants when those consultants had not reviewed a substantial portion of the record. *Blakley,* 581 F.3d at 409. But *Blakely* should not be misconstrued as "providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record." *Kepke v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2016 WL 124140, at *7 (6th Cir. Jan. 12, 2016) (citing *Blakely*, 581 F.3d at 409). "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96–6p, 1996 WL 374180, at *2 (1996)).

In *Blakely*, the ALJ failed to give any indication that she had considered the evidence subsequent to the state agency physicians' opinions before giving them great weight. *Blakley,* 581 F.3d at 409. Here, the ALJ considered the overall record, and found that Dr. Morrow's opinion was consistent with it. [R. 7-2, Tr. 26-30, 34-35]. Specifically, the ALJ

found that Bolton's independence in activities of daily living, and his ability to write his own music and do some plumbing work during his alleged period of disability were consistent with the state agency medical opinions. [*Id.*, Tr. 34; R. 7-7, Tr. 570-74].

The fact that Bolton was diagnosed with schizophrenia after Dr. Morrow rendered her opinion does not change the analysis because a diagnosis alone says nothing about its severity or its impact on his ability to perform work activities. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988); *Kennedy v. Astrue*, 247 Fed. Appx. 761, 767 (6th Cir. 2007). Both before and after Dr. Morrow's opinion, treating psychiatrist Kehinde Ayeni, M.D., assessed Bolton as having a Global Assessment of Functioning ("GAF") score of 55, which is within a moderate range.[2] [R. 7-7, Tr. 308-12, 331-74, 394-425, 581-85, 648-55]. Bolton has set forth no evidence that his functional limitations increased after he was diagnosed with schizophrenia such that Dr. Morrow's opinion would have changed.

---

[2] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n. 1 (6th Cir. 2012) (citations omitted).

Although Bolton disputes Dr. Morrow's opinion that he demonstrated an ability to perform work, pointing out that he was prevented for working from 2006 to 2010 due to his incarceration, the record demonstrates that he did perform some work during the relevant time period. He earned low wages for most years from 1998 to 2005, and he testified to having performed some work as a pipefitter from 2000 to 2006, and in 2011 or 2012. [R. 7-2, Tr. 49-50, 92-93; R. 7-3, Tr. 143]. He further testified that he stopped working in about 2011 because of an eye injury, not because of a mental disability. [R. 7-2, Tr. 49-50]. For these reasons, Bolton's correction that he did not work from 2006 to 2010 due to his incarceration does not undermine Dr. Morrow's opinion.

Bolton's argument that Dr. Morrow's opinion should be rejected because she is a psychologist rather than a psychiatrist is without merit. [R. 14, PgID 934]. Bolton relies upon *Walker v. Eyke*, 417 F. App'x 461, 464 (6th Cir. 2011), but that is a prisoner civil rights case and it does not indicate that a psychologist is unqualified to perform an assessment of mental impairments. Social Security law specifically allows a psychiatrist *or* a psychologist to assess mental impairments, and each is equally capable of doing so. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); 42 U.S.C. § 421(h).

For these reasons, Bolton's complaint that the ALJ gave undue weight to Dr. Morrow's opinion is without merit.

**B.     The ALJ Did Not Violate the Treating Physician Rule**

Bolton argues that the ALJ violated the treating physician rule by failing to give controlling weight Dr. Ayeni's opinion.  In July 2013, Dr. Ayeni signed a medical source statement in which he assessed Bolton as being markedly limited in all categories of understanding and memory, sustained concentration and persistence, social interaction and adaptation.  [R. 7-7, Tr. 592-94].  Dr. Ayeni opined that Bolton had substantial losses in his ability to understand, remember and carry out simple instructions; make simple work-related decisions; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in routine work settings.  [*Id.*, Tr. 594].  Dr. Ayeni's opinion was identical to that of Thomas Haefner, MA, LLP which was rendered in December 2012.  [R. 7-8, Tr. 781-83].  The ALJ gave these opinions little weight.  [R. 7-2, Tr. 34].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry,* 741 F.3d at 723, 727–

10

29; *Rogers,* 486 F.3d at 242–43. An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers,* 486 F.3d at 242 (quoting SSR 96–2p, 1996 WL 374188, at *5 (1996)). Those good reasons must be articulated with specificity. SSR 96–2p at *5. This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers,* 486 F.3d at 242–43 (citation and internal quotation marks omitted).

Here, the ALJ clearly articulated his reasons for according little weight to Dr. Ayeni's opinion, and his conclusion is well supported by the record. [R. 7-2, Tr. 34]. Bolton argues that the ALJ improperly rejects the opinions of both Dr. Ayeni and Haefner for being identical and in check box form. But the Court agrees with the Commissioner that the ALJ did not reject the opinions because they were identical; he merely noted that the opinions are identical to explain that his analysis of one opinion may also apply to the other.  And the ALJ had good grounds to reject Dr. Ayeni and Haefner's opinions because "[b]oth reports consist simply of forms in which spaces are filled out and boxes are checked off." *Rogers v. Comm'r of Soc. Sec.*,

11

225 F.3d 659 (6th Cir. 2000).  In other words, the ALJ is not "bound by the conclusory statements of physicians, particularly where the statements are unsupported by detailed objective criteria and documentation in the medical record, and are inconsistent with the rest of the evidence." *Ellars v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2016 WL 2610234, at *2 (6th Cir. May 6, 2016).

Bolton contends that the opinions are not conclusory, citing the handwritten note on each page of Dr. Ayeni's form that stated "please see attached psych eval." [R. 7-7, Tr. 592-95]. But the medical record, including Dr. Ayeni's evaluations, do not support her opinion that Bolton suffers from such extreme limitations.

The ALJ noted that Bolton had seen Dr. Ayeni approximately once per month for "medication review" between July 2011 and April 2013 for about ten minutes per visit. [*Id.*, Tr. 29].  Although Bolton was described as having "noncommand auditory hallucination with paranoid themes," Dr. Ayeni routinely found his mental health to be in stable condition, and assessed him with a GAF score of 55 throughout.  [R. 7-7, Tr. 308-12, 331-74, 394-425, 581-85, 648-55]. He was generally found to be "pre-occupied," and on some occasions "delusional" and "paranoid," but otherwise his condition remained unaltered. [*Id.*]. His initial diagnoses were

12

mood disorder not otherwise specified, polysubstance dependence, and antisocial personality disorder. [*Id.*, Tr. 312]. Mood disorder was later changed to psychotic disorder not otherwise specified, but the reports remained consistent otherwise. [*Id.*, Tr. 472-75]. In May 2013, Dr. Ayeni updated Bolton's diagnosis from psychotic disorder to schizophrenia, paranoid type. [R. 7-7, Tr. 581-85]. But otherwise, there is no indication that his condition had changed from the start of treatment. [*Id.*]. The ALJ correctly noted that the records during this period "have a mechanical quality about them with the brief narrative repeated as if it is copied or pasted." [R. 7-2, Tr. 29].

In June 2013, Bolton met with Mr. Haefner, who opined that he was "independent and able to handle his own [activities of daily life]." [R. 7-7, Tr. 571]. Haefner found that Bolton displayed "an even mood with on target speech," and that his symptoms were managed effectively with psychotropic medications. [*Id.*]. He also opined that Bolton was "severely and persistently mentally ill," but that to "decrease the likelihood of decompensation," Bolton needed only "the Adult Outpatient Program and Case Management level of care." [*Id.*]. Bolton also stated that he had done plumbing repair work at a suspected drug house. [*Id.*]. At a later meeting with Haefner, Bolton displayed an even mood with on target speech, good

13

hygiene and grooming, and a lack of suicidal or homicidal thoughts. [R. 7-8, Tr. 657].

The ALJ found Dr. Ayeni's and Haefner's opinions to be inconsistent with Bolton's treatment record, including the lack of changes in his medication; his stable condition; and his independence in activities of daily living, including writing his own music and doing plumbing work. [R. 7-2, Tr. 34]. These are relevant considerations, as the ALJ is required to consider the type, dosage, and effectiveness of Bolton's medication, his non-medication treatment and his daily activities. 20 C.F.R. § 416.929(c)(3). The Court also agrees that Bolton's consistent GAF score of 55 contradicts Dr. Ayeni's opinion that Bolton was markedly limited in all functions. [R. 7-2, Tr. 34]. Together, this evidence provides substantial evidence for the ALJ's conclusion.

Bolton argues that the ALJ "failed to offer any credible analysis regarding the 'good reasons' factors." [R. 14, PgID 933]. To give good reasons, an ALJ need not provide an "exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011). The rule "is not a procrustean bed, requiring an arbitrary conformity at all times." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010). Here, the ALJ gave legitimate reasons for the weight placed on the

14

various medical opinions of record, permitting a meaningful review of the decision. *Rogers*, 486 F.3d at 243.

### C. The RFC Assessment Was Within the Province of the ALJ

The ALJ crafted a RFC more restrictive than that suggested by Dr. Morrow and state agency physician Michael Parish, M.D.,[3] though based on their findings. Bolton argues that by diverging from the exact suggested RFC of the state agency consultants, the ALJ's RFC is not supported by the record. He suggests that the ALJ must adopt the RFC of a particular medical source in its entirety, or will otherwise be "supplant[ing] his opinion regarding limitations or abilities for that of a physician." [R. 14, PgID 935]. However, "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Requiring the ALJ to base his RFC on a medical opinion would be an abdication of this responsibility. *Id.* (citing SSR 96–5p, 1996 WL 374183 (July 2, 1996)). This argument lacks merit.

### D.  The ALJ Properly Evaluated Bolton's Mental Impairments

Bolton's final argument is that the ALJ failed to properly evaluate his severe mental impairments of schizophrenia, poly-substance abuse

---

[3] Dr. Parish's opinion can be found at R. 7-3, Tr. 121-133.

disorder, and anti-social personality disorder under Social Security Rulings (SSR) 96-8p, 1996 WL 374184 (July 2, 1996) and 85-15, 1985 WL 56857 (1985). The Court does not agree.

SSR 96-8p requires the ALJ to individually assess the exertional and non-exertional capacities of a claimant in determining the RFC, but it does not "require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (internal citations and quotations omitted). Rather, the ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548 (internal citations and quotations omitted). Here, complying with SSR 96-8p, the ALJ explicitly weighed the evidence in the record and individually assessed Bolton's extertional and non-exertional capacities.  [R. 7-2, Tr. 32-35].

Bolton's reliance on SSR 85-15 is misplaced because that ruling applies to claimants with solely non-exertional limitations. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("SSR 85–15 focuses on claimants with mental impairments and explicitly states that it applies to claimants with solely nonexertional impairments."); *Doneworth v. Shalala*, 76 F.3d 378 (6th Cir. 1996) (agreeing that "SSR 85-15 does not

apply to claimant since he has both exertional and nonexertional limitations and SSR 85-15 applies to cases where only a nonexertional limitation is present.").

Bolton argues that the ALJ erred in disregarding the hypothetical questions posed to the VE by his attorney, but the ALJ was not required to consider answers to all hypothetical questions. "Rather, the ALJ properly relied on the VE's response to a hypothetical question that was based on the limitations that were credited by the ALJ and supported by substantial evidence on the record." *Walton v. Comm'r of Soc. Sec.*, 60 F. App'x 603, 611 (6th Cir. 2003).

Finally, although Bolton argues that the ALJ erred by mischaracterizing his mental impairments as non-severe, the ALJ did in fact find that Bolton's schizophrenia, poly-substance abuse disorder, and antisocial personality disorder were severe impairments and included non-exertional limitations in the RFC assessment. [R. 7-2, Tr. 26, 32]. As to Bolton's alleged attention deficit hyperactivity disorder (ADHD), the ALJ observed that Bolton had never been diagnosed with ADHD; Bolton stated that he had such a diagnosis and that was merely repeated by a medical provider. [R. 7-2, Tr. 31; R. 7-7, Tr. 513-15].

For these reasons, the Court does not find that the ALJ erred in assessing Bolton's mental impairments.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Bolton's Motion for Summary Judgment **[R. 14]** be **DENIED**, the Commissioner's Motion **[R. 16]** be **GRANTED** and this case be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 3, 2016

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 3, 2016.

>  s/Marlena Williams
>  MARLENA WILLIAMS
>  Case Manager