UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS BOLTON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Case No. 15-cv-11838
Hon. Matthew F. Leitman

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF #21), (2) ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION, (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #14), AND (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #16)**

In this action, Plaintiff Dennis Bolton ("Bolton") alleges that the Social Security Administration (the "SSA") wrongly denied his application for Social Security disability benefits. After the parties filed cross-motions for summary judgment, the assigned Magistrate Judge issued a Report and Recommendation (the "R&R") in which she recommended that the Court (1) grant summary judgment in favor of the Defendant, the Commissioner of Social Security (the "Commissioner"), and (2) deny Bolton's motion for summary judgment. (*See* ECF #20.) Bolton filed timely objections to the R&R (the "Objections"). (*See* ECF #21.) The Court has conducted a *de novo* review of the portions of the R&R to

1

which Bolton has objected. For the reasons stated below, the Court **OVERRULES** the Objections, **ADOPTS** the Magistrate Judge's recommended disposition of the case, **GRANTS** the Commissioner's motion for summary judgment, and **DENIES** Bolton's motion for summary judgment.

## RELEVANT FACTUAL BACKGROUND

On August 1, 2012, Bolton filed an application for supplemental security income in which he alleged that he could no longer work as a pipe fitter. Prior to filing his application, Bolton had worked continuously as a pipe fitter from 1988 until 2006. (*See* Admin. R., ECF #7-2 at 50-51, Pg. ID 81-82; ECF #7-6 at 15, Pg. ID 315.) Bolton was then incarcerated in February of 2006 and was released at some point in 2010. (*See* R&R, ECF #20 at 6, Pg. ID 1017.) After Bolton was released, it appears that he resumed working as a pipe fitter intermittently the next year until he suffered an eye injury and stopped working on October 1, 2011. (*See* Admin. R., ECF #7-2 at 51, Pg. ID 82; ECF #7-6 at 15, Pg. ID 315.) In his application for supplemental security income, Bolton claimed that his disability onset date was November 1, 2011. (*See id.*, ECF #7-2 at 25, Pg. ID 56.)

Bolton's application for supplemental security income was initially denied on October 3, 2012. (*See id.*, ECF #7-4 at 2, Pg. ID 189) Bolton then filed a written request for a hearing before an administrative law judge in which he sought to challenge the SSA's denial of his application for benefits. (*See id.*, ECF #7-2 at

2

21, Pg. ID 52.) On December 6, 2013, a hearing was held before administrative law judge Michael Dunn (the "ALJ"). (*See id.*, ECF #7-2 at 44, Pg. ID 75.)

At the hearing, Bolton testified that he suffered from a number of physical impairments, including a first-degree atrioventricular valve block and high blood pressure. (*See id.*, ECF #7-2 at 52-53, Pg. ID 83-84.) He also testified that he suffered from anxiety, frequent headaches, and needed to nap on a fairly regular basis throughout the day. (*See id.*, ECF #7-2 at 53, 60, Pg. ID 84, 91.) When Bolton was asked what physical tasks he could perform, he testified that he could sit for thirty minutes at a time, stand for up to an hour, and perform light grocery shopping – though he preferred not to leave his home. (*See id.*, ECF #7-2 at 58-59, 64-65, Pg. ID 89-90, 94-95.)

On February 11, 2014, the ALJ issued a written decision in which he determined that Bolton was not disabled and was therefore not entitled to supplemental security income (the "ALJ's Decision"). (*See* ECF #7-2 at 37, Pg. ID 68.) The ALJ followed a five-step analysis[1] and made the following findings: (1) Bolton had not engaged in substantial gainful employment since the application date (August 1, 2012) (*see id.* at 27, Pg. ID 58); (2) Bolton did suffer from severe impairments, including an atrioventricular block, schizophrenia, polysubstance

---

[1] The SSA's five-step analysis is codified in 20 C.F.R. §§ 404.1520, 416.920 and is provided in the R&R. (ECF #20 at 2-5, Pg. ID 1013-16.)

abuse disorder, and antisocial personality disorder (*see id.*); (3) Bolton's combination of impairments did not presumptively entitle him to disability benefits (*see id.* at 31, Pg. ID 63); (4) Bolton was not able to perform the relevant work that he performed in the past (*see id.* at 36, Pg. ID 67); and (5) Bolton was capable of performing a significant number of jobs that exist in the national economy despite his severe impairments (*see id.* at 36-37, Pg. ID 67-68.)

The ALJ also concluded that Bolton, even with his severe physical and mental impairments, had the residual functional capacity[2] (the "RFC") to

> perform light work as defined in 20 C.F.R. § 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds; can never work at unprotected heights and must avoid hazardous machinery such as machinery with moving mechanical parts; and can never operate a motor vehicle. In addition, the claimant is limited to simple, routine, and repetitive unskilled tasks . . . . The claimant is limited to work tasks free of fast pace production requirements with few if any work place changes and with nothing more than simple work related decisions required. Additionally, the claimant is limited to only occasional interaction with supervisors and with coworkers, can have no tandem tasks with coworkers, and can have no interaction with the public.

(*Id.* at 33, Pg. ID 64.) To determine Bolton's RFC, the ALJ considered the testimony given by Bolton and a vocational expert (the "VE"), and he also reviewed a litany of Bolton's medical records. With respect to Bolton's mental

---

[2] A claimant's "residual functioning capacity" is the "most [a claimant] can still do despite [his] limitations." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (quoting 20 C.F.R. § 404.1545(a)(1)).

impairments (including schizophrenia and antisocial personality disorder), the ALJ assigned little weight to Bolton's treating psychiatrist, Dr. Kehinde Ayeni ("Dr. Ayeni"), and one of Bolton's counselors, Thomas Haefner, M.A. ("Mr. Haefner"). (*See id.* at 35, Pg. ID 66.) The ALJ noted that Dr. Ayeni and Mr. Haefner "indicated that the claimant had the most extreme limitations across the board," without sufficient evidence or explanation. (*Id.*) Thus, the ALJ discounted their opinions and, instead, assigned great weight to the opinion of the State Agency psychologist, Kathy Morow, Ph.D. ("Dr. Morrow"). (*See id.* at 36, Pg. ID 67.) Dr. Morrow reviewed Bolton's treatment notes and determined that "the existence of a mental impairment [was] supported by the medical evidence, however, the severity of [symptoms] as described by [Bolton were] not [] supported." (Admin. R., ECF #7-3 at 13, Pg. ID 164.) The ALJ therefore concluded that Bolton was not disabled and was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ALJ's Decision, ECF #7-2 at 37, Pg. ID 68.)

On May 21, 2015, Bolton filed this action challenging the ALJ's Decision. (*See* Compl., ECF #1.) Bolton claims that the evidence before the ALJ showed "without substantial contradiction that Plaintiff was severely disabled . . . and is unable to engage in any substantial gainful activity, within the meaning of the Social Security Act." (*Id.* at 3, Pg. ID 3.) Bolton and the Commissioner then filed

5

cross-motions for summary judgment. (*See* Pl.'s Mot. Summ. J., ECF #14; Def.'s Mot. Summ. J., ECF #16.) The Magistrate Judge then issued the R&R in which she recommended that the Court grant the Commissioner's motion and deny Bolton's motion. (*See* R&R, ECF #20 at 1-2, Pg. ID 1012-13.)

On June 16, 2016, Bolton filed timely objections to the R&R (the "Objections"). (*See* ECF #21.) Bolton has made the following four objections:

1. The Magistrate Judge erred when she determined that the ALJ properly assigned minimal weight to the opinions of Bolton's treating sources, Dr. Ayeni and Mr. Haefner, and therefore violated the "treating-source rule" (*see id.* at 7, Pg. ID 1013);

2. The Magistrate Judge erred when she determined that the ALJ properly assigned Dr. Morrow's opinion great weight (*see id.* at 3, Pg. ID 1033);

3. The Magistrate Judge erred when she determined that the ALJ's RFC Assessment of Bolton "was supported by the record" (*id.* at 9, Pg. ID 1039); and

4. The Magistrate Judge erred when she determined that the ALJ properly evaluated Bolton's severe mental impairments under Social Security Ruling ("SSR") 96-8p (*id.* at 11, Pg. ID 1041).

## **GOVERNING LEGAL STANDARD**

When a party has objected to portions of a Magistrate Judge's R&R, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). The Court has

no duty to conduct an independent review of the portions of the R&R to which the parties did not object.[3] *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

In reviewing the disputed findings of the ALJ, the Court is limited to determining whether those findings are supported by substantial evidence and are made pursuant to proper legal standards. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .") Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. "[A] court is obligated to remand for further administrative proceedings if there are any unresolved essential factual issues." *Meehleder v. Comm'r of Soc. Sec.*, 2012 WL 3154968, at *2 (E.D. Mich. Aug. 2, 2012) (citing *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994)).

---

[3] The Court has nevertheless reviewed these portions of the R&R and agrees with the findings and conclusions of the Magistrate Judge.

## ANALYSIS

### A. The ALJ Did Not Violate the Treating-Source Rule

From 2011 through at least 2013, Dr. Ayeni was Bolton's psychiatrist. (*See* Admin. R., ECF #7-7 at 2, 102, Pg. ID 345, 445.) Bolton also met with a counselor, Mr. Haefner, as part of his mental health treatment during this time. Bolton asserts that the ALJ should have assigned controlling weight to Dr. Ayeni's and Mr. Haefner's opinions that he (Bolton) had severe impairments that prevented him from obtaining gainful employment. (*See* Objections, ECF #21 at 8, Pg. ID 1038.) The Court disagrees.

A treating physician's medical opinion is given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). An ALJ must provide "good reasons" for discounting the opinion of an applicant's treating physician. *See id.*; *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).

The ALJ provided a number of good reasons for discounting the opinions of Dr. Ayeni and Mr. Haefner. First, the ALJ addressed the medical source statements Dr. Ayeni and Mr. Haefner submitted. (*See* Admin. R., ECF #7-7 at

286-89, Pg. ID 629-32; ECF #7-8 at 137-40, Pg. ID 819-22; hereinafter, the "Medical Source Statements".) The ALJ noted that

> [b]oth statements are identical and are in the nature of a checkbox form. On the forms, Dr. Ayendi [sic] and Mr. Haefner, indicated that the claimant had the most extreme limitations across the board. For example, both Dr. Ayendi [sic] and Mr. Haefner opined that the claimant has a substantial loss of ability to understand, remember, and carry out simple instructions or make judgments commensurate with unskilled work. . . . I note that both medical source statements are conclusory, as neither includes a basis or explanation for the opinions.

(ALJ's Decision, ECF #7-2 at 36, Pg. ID 66.) The Court has reviewed the Medical Source Statements and concludes that the ALJ properly assigned them little weight. Both Dr. Ayeni and Mr. Haefner simply checked boxes indicating that Bolton was "markedly limited" on every metric regarding his "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation." (Medical Source Statements, ECF #7-7 at 286-89, Pg. ID 629-32; ECF #7-8 at 137-40, Pg. ID 819-22.) But neither Dr. Ayeni nor Mr. Haefner explained the basis for their conclusions with any detail whatsoever. In fact, both Dr. Ayeni and Mr. Haefner left blank the portion of the form asking for "clarifying comments." (*See id.*)

In the Objections, Bolton claims that Dr. Ayeni did perform in-depth psychological evaluations and that those evaluations were submitted to the ALJ. In support of this claim, Bolton cites to Dr. Ayeni's handwritten note on the Medical

9

Source Statement reading "please see attached psych eval." (*See id.*, ECF #7-7 at 286-87, Pg. ID 629-30.) But Bolton did not provide a citation indicating where the "attached psych eval" appears in the record (and it is unclear whether the alleged evaluation was *ever* included in the record). To the extent that the "attached psych eval" refers to Dr. Ayeni's treatment notes, they are no different than the Medical Source Statements. That is, Dr. Ayeni's treatment notes are also conclusory and also in checkbox form. (*See, e.g.*, Admin. R., ECF #7-7 at 47, Pg. ID 390.) Additionally, those notes show that Dr. Ayeni's sessions with Bolton were brief and infrequent: Bolton saw Dr. Ayeni approximately once per month for no more than ten minutes at a time. (*See, e.g.*, *id.* at 31, Pg. ID 374.)

The ALJ also assigned little weight to the opinions of Dr. Ayeni and Mr. Haefner because he concluded that their opinions were "inconsistent with the overall record." (ALJ's Decision, ECF #7-2 at 35, Pg. ID 66.) With respect to Dr. Ayeni, the ALJ noted that his assessments of Bolton were internally conflicting. Dr. Ayeni indicated that Bolton was severely impaired, yet he invariably assigned Bolton a global assessment of functioning score ("GAF score") of 55 – which indicates only moderate impairment, *see Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 436 n.1 (6th Cir. 2012) – at each session regardless of Bolton's symptoms. (*See, e.g.*, Admin. R., ECF #7-7 at 32, Pg. ID 375.) Indeed, Bolton received a GAF score of 55 even when Dr. Ayeni noted that Bolton was

"delusional," "paranoid," and experiencing "hallucinations." (*See id.* at 94-95, Pg. ID 437-38.) Dr. Ayeni also continued to prescribe Bolton "the same medication at the same amounts throughout his treatment" irrespective of his symptoms. (ALJ's Decision, ECF #7-2 at 35, Pg. ID 66.) Given these aspects of Dr. Ayeni's assessments of Bolton, the ALJ reasonably chose to assign Dr. Ayeni's medical opinion minimal weight.

The ALJ similarly noted that Mr. Haefner's conclusion that Bolton was completely disabled was not consistent with important parts of his treatment records. For example, the ALJ noted that although Bolton informed Mr. Haefner that he suffered from "auditory hallucinations and paranoia," Bolton also reported that "he [was] managing his symptoms effectively via psychotropic medications." (ALJ's Decision, ECF #7-2 at 30, Pg. ID 61.) The ALJ also cited Mr. Haefner's treatment notes indicating that Bolton "minimized [the] impact [of his hallucinations and paranoia] on his life and was more focused on medical and financial issues" during their sessions. (*Id.* at 31, Pg. ID 62.) Finally, the ALJ pointed out that Bolton "told treating sources that he [had] no limitations with respect to activities of daily living." (*Id.* at 32, Pg. ID 63.)

Put simply, Dr. Ayeni's and Mr. Haefner's assessments that Bolton had "marked limitations for all functions" were inconsistent with material aspects of (1) Bolton's treatment records, (2) his self-reports, and (3) the record as a whole.

11

These internal inconsistencies between the treating sources' opinions and their own treatment notes and/or records provide yet another reason for the ALJ to assign their opinions minimal weight.

Thus, the Court concludes that the ALJ provided good reasons for assigning little weight to the opinions of Dr. Ayeni and Mr. Haefner and this objection is overruled.

**B.   The ALJ Did Not Err By Assigning Great Weight to Dr. Morrow's Opinion**

Bolton objects that the ALJ improperly assigned great weight to Dr. Morrow's opinion for three reasons: (1) Dr. Morrow was "unable to review the complete medical record, including [Bolton's] diagnosis of schizophrenia in May 2013, before making her conclusion in 2012" (Objections, ECF #21 at 3, Pg. ID 1033), (2) Dr. Morrow's opinion relied on facts not in evidence (*id.* at 6, Pg. ID 1036), and (3) Dr. Morrow "specializes in psychology and not psychiatry" and therefore her "opinions relating to the practice of medicine should be rejected," (*id.* at 6-7, Pg. ID 1036-37). The Court considers each reason in turn.

The parties do not dispute that Dr. Morrow did not review Bolton's complete medical record. And there is no question that Dr. Morrow opined that Bolton was capable of performing "at least simple, unskilled work" in September 2012, approximately eight months before Bolton was diagnosed with schizophrenia in May 2013. (*See* Admin. R., ECF #7-3 at 13, Pg. ID 164.) Bolton contends that the

12

ALJ's decision to assign great weight to Dr. Morrow's opinion even though she did not review the entire medical record is reversible error under *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).  In *Blakely*, the United States Court of Appeals for the Sixth Circuit reversed a denial of benefits, in part, because the ALJ relied on the opinions of state-agency physicians who had not reviewed several crucial medical records regarding the claimant's alleged impairments.

However, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record."  *Helm v. Comm'r of Soc. Sec.*, 405 Fed. App'x 997, 1002 (6th Cir. 2011).  Moreover (and as the Magistrate Judge aptly noted), the ALJ in *Blakely* failed to indicate whether she "had considered the evidence subsequent to the state agency physicians' opinions before giving them great weight."  (R&R, ECF #20 at 7, Pg. ID 1018 (citing *Blakely*, 581 F.3d at 409).)  In contrast, the ALJ in this action explicitly stated that Dr. Morrow's opinion was "*consistent with the overall record including the claimant's treatment record . . . .*"  (ALJ's Decision, ECF #7-2 at 36, Pg. ID 67; emphasis added.)  Furthermore, Bolton has failed to explain how Dr. Morrow's opinion would have changed if she had known that Bolton was diagnosed with schizophrenia – especially considering that Dr. Ayeni uniformly assigned Bolton a GAF score of 55 even *after* Bolton received his diagnosis.

13

With respect to Bolton's argument that Dr. Morrow relied on facts not in evidence, Bolton asserts that

> Dr. Morrow incorrectly found that Plaintiff was "employed as a pipefitter from 1988 – 2011 until significant heart problems began." [] It is unclear what evidence Dr. Morrow relied on because (1) **Plaintiff was incarcerated and performed no work from 2006 to 2010**, and, (2) the Magistrate Judge acknowledges [] Plaintiff asserted that work ceased in 2011 due to **problems with his eyes**, not a heart problem, as Dr. Morrow suggests.

(Objections, ECF #21 at 6, Pg. ID 1036; emphasis in original.)  The Court agrees that Dr. Morrow was incorrect when she stated that Bolton was "employed as a pipe fitter from 1988 – 2011" and stopped working because of "significant heart problems." (Admin. R., ECF #7-3 at 13, Pg. ID 164.)  However, Bolton has failed to persuade the Court that Dr. Morrow's error with respect to Bolton's reasons for ceasing work as a pipe fitter (i.e., a heart problem versus an eye problem) impacted her analysis in any meaningful way.  Furthermore, Dr. Morrow's misstatement that Bolton worked continuously as a pipe fitter from 1988 – 2011 was not integral to her conclusion that Bolton was capable of performing "at least simple, unskilled work."  (*Id.*)  Thus, Dr. Morrow's errors on these minor factual issues are not material to Bolton's claim.

Finally, Bolton's assertion that Dr. Morrow's opinion should be afforded great weight because she is a psychologist – not a psychiatrist – lacks merit.

14

Psychologists and psychiatrists are equally capable of determining whether a claimant is mentally impaired. *See, e.g.*, *Crum v. Sullivan*, 921 F.2d 642, 644-45 (6th Cir. 1990).

Accordingly, Bolton has failed to show that the ALJ erred by assigning great weight to Dr. Morrow's opinion and this objection is overruled.

## C.  The ALJ's RFC Assessment Was Supported by Substantial Evidence

Bolton's objection that the ALJ's RFC assessment was not supported by substantial evidence largely restates his objections that the ALJ did not follow the treating-source rule and assigned great weight to Dr. Morrow's opinion in error. However, Bolton makes the additional argument that the ALJ did "not adopt the RFC findings from the State Agency physicians nor [did] the ALJ adopt the opinions of Plaintiff's treating physicians. Instead, the ALJ develop[ed] his own RFC without explaining what medical evidence support[ed] his independent RFC finding." (Objections, ECF #21 at 10, Pg. ID 1040.)

Bolton is incorrect. The ALJ explained the basis for his RFC assessment by explicitly referring to medical evidence the record. The Court provides a non-exhaustive list of evidence (or lack thereof) to which the ALJ referred below:

- "There is no medical evidence to support allegations regarding eye or vision problems, knee or leg pain or injury, headaches or speech problems." (ALJ's Decision, ECF #7-2 at 34, Pg. ID 65.)
- "[T]he record reveals that [Bolton's] blood pressure readings are typically within normal limits . . . ." (*Id.*)

15

- "The record reflects that the claimant has first degree [atrioventricular] block. However, physical examination results throughout the record have been unremarkable and a CT angiography was unremarkable, including reflecting a coronary artery calcium score of zero, normal coronary arteries, and normal left and right ventricular size." (*Id.*)

- "I note that the claimant's psychiatric exams during treatment for physical conditions have been completely normal. . . . I note that [the] record reflects that the claimant is independent with respect to activities of daily living." (*Id.* at 35, Pg. ID 66.)

- "With respect to his mental treatment, the claimant, who acknowledges that he has difficulty finding a job due to his prison record, alleges having depression with non-command auditory hallucinations and paranoia. However, the claimant's treatment records are to a large degree unremarkable." (*Id.*)

- "I note that the [Medical Source Statements] are inconsistent with the claimant's treatment record, which among other things, continually reflects a global assessment of functioning score of 55, which is completely inconsistent with the finding that the claimant has marked limitations for all functions." (*Id.*)

The Court concludes that the ALJ reviewed the record (including Bolton's medical records) and that his RFC assessment was supported by substantial evidence. Accordingly, this objection is overruled.

**D.      Bolton Has Demonstrated No Error With the ALJ's RFC Assessment Under SSA 96-8p**

Bolton objects that the ALJ did not comply with SSR 96-8p for two reasons. First, Bolton objects that the "ALJ ignored hundreds of pages of medical records," (Objections, ECF #21 at 11, Pg. ID 1041), which, as the Court has already explained, is incorrect. Second, Bolton objects that the ALJ "also disregarded the

additional hypotheticals posed to the VE by [Bolton's] attorney, which asked if Plaintiff would be able to work if he required frequent breaks or had to miss three or more days of work per month due to illness. [] The VE clearly stated that such a requirement would preclude Plaintiff from holding a job." (*Id.*)

A VE's response to an ALJ's hypothetical question constitutes substantial evidence for the purposes of SSR 96-8p only to the extent that the hypothetical question "accurately portrays [the claimant's] individual physical and mental impairments." *Littlepage v. Chater*, 134 F.3d 371 (6th Cir. 1998) (Table) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *see also Gant v. Comm'r of Soc Sec.*, 372 Fed App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.").

The ALJ was not required to rely on the hypothetical questions Bolton has identified in the Objections because they did not accurately portray his physical and mental impairments. Those hypothetical questions assumed that Bolton is totally disabled and cannot work. But the pieces of evidence in support of this contention – namely, the opinions of Dr. Ayeni and Mr. Haefner – were properly assigned minimal weight by the ALJ. Furthermore, the ALJ concluded that Bolton's testimony regarding the severity of his symptoms was not credible. (*See* ALJ's Decision, ECF #7-2 at 35, Pg. ID 66 ("In terms of credibility, I note that the

claimant's treatment record and his activities of daily living do not support the claimant's alleged symptoms and degree of limitations.").) Rather, the ALJ noted that the record showed that Bolton "writes music, is pursuing an entertainment career, shops at local stores, and is involved in church activities" and that "[a]lthough not dispositive of disability . . . [Bolton] has collected unemployment benefits after his alleged onset date, and he thus had to indicate his readiness to work when applying and continuing to receive such benefits." (*Id.*)

Accordingly, this objection is overruled.

## **CONCLUSION**

For the reasons stated above, **IT IS HEREBY ORDERED** that

- Bolton's Objections to the R&R (ECF #21) are **OVERRULED**;

- The Magistrate Judge's recommended disposition in the R&R is **ADOPTED**;

- Bolton's Motion for Summary Judgment (ECF #14) is **DENIED**; and

- The Commissioner's Motion for Summary Judgment (ECF #16) is **GRANTED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: August 18, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 18, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113